FILED
2019 Oct-21 PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| TROY LOVELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 3:19-cv-00136-SGC |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, Commissioner, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Troy Lovell, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Lovell timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C § 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Lovell has a tenth-grade education and previously worked as a construction worker. (Tr. at 26, 164). In his application for SSI, Lovell alleged he became disabled on July 1, 2015, due to rheumatoid arthritis, weakness and numbness in

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

both hands, and "bad nerves." (*Id.* at 163). Lovell later amended the alleged onset date of his disability to April 8, 2016. (*Id.* at 19). After his claim was denied, Lovell requested a hearing before an administrative law judge ("ALJ"). (*Id.*). Following a hearing, the ALJ denied Lovell's claim. (*Id.* at 19-28). Lovell was fifty-four years old when the ALJ issued his decision. (*Id.* at 27, 28). After the Appeals Council denied review of the ALJ's decision (*id.* at 1-3), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Lovell commenced this action. (Doc. 1).

## II. **Statutory and Regulatory Framework**

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 416.920(a)(4)(i). If the claimant is engaged

2

in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 416.920(a)(4)(i) and (b). At the first step, the ALJ determined Lovell has not engaged in substantial gainful activity since April 8, 2016. (Tr. at 21).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Lovell has the following severe impairments: degenerative disc disease, osteoarthritis, anxiety disorder, and major depressive disorder. (Tr. at 21).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairment meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 416.920(a)(4)(iii) and (d). At the third step, the ALJ determined Lovell does not have an impairment or combination of impairments that meets or medically equals the severity of one of

3

the Listings. (Tr. at 21).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R § 416.920(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 416.920(a)(4)(iv) and (e). If the claimant is capable of performing his or her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 416.920(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Lovell has the RFC to perform a limited range of medium work. (Tr. at 23).[2] At the fourth step, the ALJ determined Lovell is not able to perform his past relevant work. (*Id.* at 26).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 416.920(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is

---

[2] Medium work is defined as that which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

4

disabled. *Id.* at § 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering Lovell's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Lovell can perform, such as those of dish washer, janitor, and hand packager. (Tr. at 27). Therefore, the ALJ concluded Lovell is not disabled. (*Id.* at 28).

### III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A

district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Lovell argues the ALJ improperly discredited his testimony regarding his pain and other subjective symptoms. (Doc. 13).

A claimant may establish disability through testimony of pain or other subjective symptoms. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). To do so, he must satisfy the three-part "pain standard," by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain or other subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Id.*; *see also Taylor v. Acting Comm'r of Soc. Sec. Admin.*,

2019 WL 581548, at *2 (11th Cir. 2019) (citing *Dyer*, 395 F.3d at 1210); 20 C.F.R. § 416.929; SSR 16-3p. A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Brown*, 921 F.2d at 1236 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1552 (11th Cir. 1986)).

An ALJ may discredit a claimant's testimony regarding his pain or other subjective symptoms provided he or she clearly articulates explicit and adequate reasons for doing so. *Brown*, 921 F.2d at 1236; *Taylor*, 2019 WL 581548, at *2 (citing *Dyer*, 395 F.3d at 1210). In evaluating a claimant's testimony and other statements regarding the intensity, persistence, and limiting effects of his symptoms, an ALJ considers all available evidence, including objective medical evidence; the type, dosage, and effectiveness of medication taken to alleviate symptoms; and treatment other than medication received to relieve symptoms. 20 C.F.R. § 416.929(c).

Lovell testified that due to pain he cannot stand, sit, or walk for more than thirty minutes at a time; must lie down for approximately three-and-a-half hours during the day; and cannot shop for groceries, cook on the stove, wash dishes, or do other housework. (Tr. at 37-42). He also testified he has trouble concentrating due to anxiety and trouble sleeping due to depression. (*Id.* at 42-43). The ALJ

7

determined that while Lovell's medically determinable impairments could reasonably be expected to cause his alleged pain and other subjective symptoms, Lovell's statements concerning the intensity, persistence, and limiting effects of his pain and other subjective symptoms are not entirely consistent with the medical and other evidence of record. (*Id.* at 24).

The ALJ articulated multiple reasons for discrediting Lovell's testimony. First, the ALJ determined Lovell's allegations of disabling pain and other subjective symptoms are inconsistent with and unsupported by treatment and examination records. (*Id.* at 24-26). Substantial evidence supports this determination. Imaging performed in August 2014 and August 2016 showed only mild cervical stenosis and moderate osteoarthritis of the lumbar spine. (*Id.* at 238, 347). When Lovell complained of neck pain in March 2016, his primary care physician, Dr. Ernest L. Hendrix, began prescribing narcotic pain medication as part of what he described as "pain management at [the] low level." (*Id.* at 269-70).

A consultative physical examination performed by Dr. E.L. Mollohan in July 2016 revealed no cervical or lumbar radicular pain, neurological symptoms, or focal, sensory, or musculoskeletal deficits. (*Id.* at 337). Lovell had only slightly reduced grip strength in his right hand and was able to perform repetitive, fine movements with his hands and fingers. (*Id.*). He also was able to stand up from a seated position and get on and off the examination table without difficulty. (*Id.*).

When Lovell presented for prescription re-fills in September 2016, Dr. Hendrix noted Lovell experienced some pain relief by repositioning his neck, Lovell's hands still hurt "at times," and Lovell's hand numbness was "episodic." (*Id.* at 355). Treatment of mild-to-moderate spinal conditions and intermittent hand pain and numbness with "low level" pain management is not entirely consistent with allegations of disabling pain.

During the relevant period, Dr. Hendrix also treated Lovell for anxiety. (*Id.* at 261-77, 287-89, 351-53). In August 2016, Lovell reported to Dr. John Haney during a consultative psychological examination that the prescription medication Dr. Hendrix prescribed to treat his anxiety was at least partially helpful. (*Id.* at 344). Dr. Haney concluded Lovell's ability to function in a work setting appeared only moderately impaired by emotional limitations and that with psychiatric treatment and continued abstinence from alcohol and drugs, his condition might improve in the next six to twelve months. (*Id.* at 345). Containing substantially no more than a diagnosis of anxiety and a report that prescription medication provided some relief, records of Lovell's treatment are not entirely consistent with allegations of disabling anxiety.

Second, the ALJ determined Lovell's allegations of disabling pain are undercut by evidence indicating Lovell does not actually need narcotic pain medication. (*Id.* at 26). Substantial evidence supports this determination. When

9

Lovell presented for prescription re-fills in September 2016, Dr. Hendrix ordered a drug screen, which revealed methamphetamine, marijuana, and morphine in Lovell's system, but none of the medications prescribed for him. (*Id.* at 358-61).[3] Given as much, substantial evidence supports not only the determination Lovell's pain is not so great as to require narcotic pain medication, but also the determination Lovell's anxiety is not so great to as to require prescription medication to treat this condition.

Third, the ALJ determined Lovell's allegations of disabling pain and other subjective symptoms are inconsistent with his reported daily activities and interactions with other people. (*Id.* at 26). Substantial evidence supports this determination. Lovell reported to the consultative psychological examiner that on an average day he does household chores, cares for a dog, watches television, and sometimes walks. (*Id.* at 345). A friend of Lovell stated in a "Third Party Function Report" that Lovell bathes himself daily, feeds and waters two small dogs, shops for food once a week and prepares sandwiches and frozen dinners daily, does laundry once a week, manages his own finances, watches television and reads daily, talks on the phone and visits with friends twice a week, and gets along with authority figures very well. (*Id.* at 180-87).[4] Moreover, both consultative examiners noted Lovell

---

[3] Consequently, Dr. Hendrix informed Lovell he could no longer treat him. (*Id.* at 361). When Dr. Hendrix began treating Lovell for pain in March 2016, he noted he would continue the treatment "as long as [Lovell] [was] compliant." (*Id.* at 270).
[4] Lovell notes he testified during the hearing that he cannot do any house work. (Doc. 13 at 11). Given his report to the consultative psychological examiner and his friend's statements in the function report are inconsistent with this testimony, the ALJ did not err in choosing not to credit

10

was cooperative. (*Id.* at 337, 344). The activities Lovell performs on a regular basis and his reported ability to interact well with other persons are not entirely consistent with allegations of disabling pain, anxiety, or deficits in attention and concentration.

Moreover, contrary to Lovell's assertion, it was appropriate for the ALJ to consider Lovell's daily activities when evaluating his pain and other subjective symptoms. While participation in daily activities of short duration does not necessarily disqualify a claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), and ALJ may consider a claimant's daily activities as part of a subjective symptoms analysis, *see Hoffman v. Astrue*, 259 F. App'x 213, 219 (11th Cir. 2007) (noting *Lewis'* holding does not mean it is improper for an ALJ to consider a claimant's daily activities at all); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (identifying claimant's daily activities as one factor relevant to evaluating symptoms); SSR 16-3p (same). Here, the ALJ considered not only Lovell's daily activities, but also treatment and examination records.

---

the testimony. *See Byars v. Colvin*, 2016 WL 4137981, at *11 (N.D. Ala. Aug. 4, 2016) (holding ALJ did not commit error by relying on inconsistencies between daily activities claimant identified in her function report and claimant's testimony during the hearing that she could not perform those daily activities in evaluating claimant's credibility). Lovell also notes that while he testified during the hearing that he cannot cook on the stove, the ALJ stated Lovell admitted he can prepare simple meals. (Doc. 13 at 11). While it was information provided by Lovell's friend, not Lovell himself, that information (i.e., that Lovell prepares sandwiches and frozen dinners on a daily basis) supports the ALJ's characterization of Lovell's ability to prepare simple meals. Moreover, the undersigned notes that characterization is also consistent with Lovell's testimony he cannot cook on the stove. For the foregoing reasons, the undersigned rejects Lovell's claim the ALJ mischaracterized his daily activities by omitting limiting descriptions. (*See* Doc. 13 at 11-12).

Lovell points to other evidence he claims supports his allegations of disabling pain and other subjective symptoms and claims the ALJ impermissibly cherry-picked evidence to support his own conclusion. (Doc. 13 at 7-8). However, as stated, the relevant question is not whether evidence supports Lovell's argument, but whether substantial evidence supports the ALJ's determination. *See Moore*, 405 F.3d at 1213 (discussing "narrowly circumscribed" nature of appellate review). Because the ALJ clearly articulated explicit and adequate reasons for discrediting Lovell's testimony regarding his pain and other subjective symptoms and that determination is supported by substantial evidence, the ALJ did not commit error. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1266 (11th Cir. 2002) (holding ALJ properly discredited claimant's testimony regarding his degree of impairment where that testimony was not consistent with objective medical evidence, daily activities, limited use of pain medication, and effectiveness of treatment).[5]

---

[5] Within his argument regarding the ALJ's decision to discredit his testimony, Lovell claims the ALJ should have applied Grid Rule 201.10. (Doc. 13 at 8-10). The "Grids," also known as the Medical-Vocational Guidelines, are found at 20 C.F.R. Part 404, Subpart P, App. 2. An ALJ may use them to determine at the fifth step whether other work exists in substantial numbers in the national economy that a claimant is capable of performing. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

> The [G]rids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Id.* at 1240. Grid Rule 201.10 directs a finding of disability for a claimant who meets certain age, education, and previous work experience requirements and is limited to sedentary work. 20 C.F.R.

## V. Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned find the Commissioner's decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 21st day of October, 2019.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

Part 404, Subpart P, App. 2, § 201.10. The ALJ determined Lovell has the RFC to perform a limited range of medium work. (Tr. at 23). That determination is supported by substantial evidence, including the evidence discussed above. Therefore, Grid Rule 201.10 does not apply to Lovell.